UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION

| | |
|---|---|
| KIM AKER, Individually and on Behalf of All Others Similarly Situated,<br><br>            Plaintiff,<br>   vs.<br><br>DOBBERSTEIN LAW FIRM LLC,<br><br>            Defendant. | Case No.: 19-cv-415<br><br>**CLASS ACTION COMPLAINT**<br><br>**Jury Trial Demanded** |

# INTRODUCTION

1. This class action seeks redress for collection practices that violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* (the "FDCPA") and the Wisconsin Consumer Act, Chs. 421-427, Wis. Stats. (the "WCA").

# JURISDICTION AND VENUE

2. The court has jurisdiction to grant the relief sought by the Plaintiff pursuant to 15 U.S.C. § 1692k and 28 U.S.C. §§ 1331, 1337, and 1367. Venue in this District is proper in that Defendant directed its collection efforts into the District.

# PARTIES

3. Plaintiff Kim Aker is an individual who resides in the Eastern District of Wisconsin (Milwaukee County). Her former name is Kim Moczarney.

4. Plaintiff is a "consumer" as defined in the FDCPA, 15 U.S.C. § 1692a(3), in that Defendant sought to collect from Plaintiff debts allegedly incurred for personal, family or household purposes, namely medical debts.

5. Defendant Dobberstein Law Firm, LLC ("DLF") is a debt collection law firm with its principal offices at 225 S. Executive Drive, Suite 201, Brookfield, Wisconsin 53005-4257.

6. DLF is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

7. DLF is engaged in the business of collecting debts owed to others and incurred for personal, family or household purposes.

8. DLF is a debt collector as defined in 15 U.S.C. § 1692a and Wis. Stat. § 427.103(3).

## FACTS

9. Plaintiff, or a dependent for whom Plaintiff was financially responsible, obtained medical services from Midwest Physicians Anesthesia Services, S.C. ("MPAS") on or about June 18, 2013.

10. The MPAS debt was a medical debt that was incurred for personal, family, or household purposes.

11. On or about October 9, 2013, MPAS mailed Plaintiff an account statement regarding the MPAS debt. A copy of this account statement is attached to this complaint as Exhibit A.

12. Exhibit A contains the following:

| | |
|---|---|
| Total Charge | $ 2112.00 |
| Payments | $ 0.00 |
| Adjustments | $ 0.00 |
| **Please Pay this Amount** | $ 2112.00 |

Exhibit A.

13. On or about September 17, 2018, DLF mailed a debt collection letter to Plaintiff regarding the alleged MPAS debt. A copy of this letter is attached to this complaint as Exhibit B.

14. Upon information and belief, Exhibit B is a form letter, generated by computer, and with the information specific to Plaintiff inserted by computer.

15. Upon information and belief, Exhibit B is a form debt collection letter used by Defendant to attempt to collect alleged debts.

16. Exhibit B contains the statutory debt validation notice that the FDCPA, 15 U.S.C. § 1692g(a), requires the debt collector send the consumer along with, or within five days of, the initial communication:

> Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt, or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within 30 days after receiving this notice that you dispute the validity of this debt, or any portion thereof, this office will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request of this office in writing within 30 days after receiving this notice this office will provide you with the name and address of the original creditor, if different from current creditor.

Exhibit B.

17. Exhibit B contains the following:

| Last Activity | Account Number | Creditor | Balance |
|---|---|---|---|
| 06/18/2013 | ▬4260 | MIDWEST PHYS. ANES. SERVICES | $2625.82 |
| | | TOTAL DUE: | $2625.82 |

Exhibit B.

18. Within thirty days of her receipt of Exhibit B, Plaintiff contacted DLF regarding Exhibit B to request further information regarding the debt.

19. On or about November 5, 2018, DLF mailed Plaintiff a letter purporting to contain "documentation validating the debt owed." A copy of this letter is attached to this complaint as Exhibit C.

3

20. Upon information and belief, Exhibit C is a form letter, generated by computer, and with the information specific to Plaintiff inserted by computer, with certain information inserted individually by hand.

21. Upon information and belief, Exhibit C is a form debt collection letter used by Defendant to attempt to collect alleged debts.

22. The first page in Exhibit C contains the following:

```
Creditor / OriginalCred         Account Number              Balance
-------------------------       ----------------        ----------------
MIDWEST PHYS. ANES. SERVICES,            4260              $2,640.00


Enclosed is documentation validating  the  debt owed. If you
have any questions or would like  to  discuss  a  resolution
please contact our office.
```

Exhibit C.

23. The second page in Exhibit C is the aforementioned "documentation validating the debt owed."

24. The second page in Exhibit C is an "Itemized Statement" dated October 31, 2018:

Itemized Statement
10/31/2018

Exhibit C.

25. The "Itemized Statement" in Exhibit C contains the following:

| Account # | DOS | Billed Amount | Work Comp Payments | Liability Payments | Health Insurance Payments | Write-Offs | Patient Payments | Remaining Balance |
|---|---|---|---|---|---|---|---|---|
| 426-0 | 6/18/2013 | $2,112.00 | | | | | | $2,112.00 |

Exhibit C.

26. The "Itemized Statement" in Exhibit C also contains the following:



Balance Due = $2,112.00

4

Exhibit C.

27. On the face of Exhibit C, it is impossible to determine whether the amount of the debt is $2,112.00, as stated in the "Itemized Statement" or $2,640.00, as stated on the first page of Exhibit C.

28. Further, neither Exhibit B nor Exhibit C provides any explanation for why DLF is apparently attempting to collect a balance that exceeds the "Balance Due" on October 31, 2018 by hundreds of dollars.

29. The unsophisticated consumer would have no way to know which amount she was supposed to pay, or whether DLF was even acting legitimately. *See, e.g., Fields v. Wilberg Law Firm, P.C.*, 383 F.3d 562 (7th Cir. 2004).

30. When the amount of the debt varies day to day, the debt collector should avoid confusion by itemizing the amounts sought, and including explanatory language in the letter. *See Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, & Clark, L.L.C.*, 214 F.3d 872, 876 (7th Cir. 2000) ("As of the date of this letter, you owe $ [the exact amount due]. Because of interest, late charges, and other charges that may vary from day to day, the amount due on the day you pay may be greater. Hence, if you pay the amount shown above, an adjustment may be necessary after we receive your check, in which event we will inform you before depositing the check for collection. For further information, write the undersigned or call 1-800-[phone number]."); *see also Chuway v. Nat'l Action Fin. Servs.*, 362 F.3d 944, 949 (7th Cir. 2004).

31. Exhibit C purports to provide documentation that validates the amount sought, but the amount validated is hundreds of dollars less than the amount sought.

32. Plaintiff was confused by Exhibits B and C.

33. The unsophisticated consumer would be confused by Exhibits B and C.

5

## *The FDCPA*

34. The FDCPA creates substantive rights for consumers; violations cause injury to consumers, and such injuries are concrete and particularized. *Pogorzelski v. Patenaude & Felix APC*, No. 16-C-1330, 2017 U.S. Dist. LEXIS 89678 *9 (E.D. Wis. June 12, 2017) ("A plaintiff who receives misinformation from a debt collector has suffered the type of injury the FDCPA was intended to protect against."); *Spuhler v. State Collection Servs.*, No. 16-CV-1149, 2017 U.S. Dist. LEXIS 177631 (E.D. Wis. Oct. 26, 2017) ("As in Pogorzelski, the Spuhlers' allegations that the debt collection letters sent by State Collection contained false representations of the character, amount, or legal status of a debt in violation of their rights under the FDCPA sufficiently pleads a concrete injury-in-fact for purposes of standing."); *Bock v. Pressler & Pressler, LLP*, No. 11-7593, 2017 U.S. Dist. LEXIS 81058 *21 (D.N.J. May 25, 2017) ("through [s]ection 1692e of the FDCPA, Congress established 'an enforceable right to truthful information concerning' debt collection practices, a decision that 'was undoubtedly influenced by congressional awareness that the intentional provision of misinformation' related to such practices, 'contribute[s] to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy,'"); *Quinn v. Specialized Loan Servicing, LLC*, No. 16 C 2021, 2016 U.S. Dist. LEXIS 107299 *8-13 (N.D. Ill. Aug. 11, 2016) (rejecting challenge to Plaintiff's standing based upon alleged FDCPA statutory violation); *Lane v. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 U.S. Dist. LEXIS 89258 *9-10 (N.D. Ill. July 11, 2016) ("When a federal statute is violated, and especially when Congress has created a cause of action for its violation, by definition Congress has created a legally protected interest that it deems important enough for a lawsuit."); *Church v. Accretive Health, Inc.*, No. 15-15708, 2016 U.S. App. LEXIS 12414 *7-11 (11th Cir. July 6, 2016) (same); *see also Mogg v. Jacobs*, No. 15-CV-

6

1142-JPG-DGW, 2016 U.S. Dist. LEXIS 33229, 2016 WL 1029396, at *5 (S.D. Ill. Mar. 15, 2016) ("Congress does have the power to enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute," (quoting *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014)). For this reason, and to encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

35. Moreover, Congress has explicitly described the FDCPA as regulating "abusive practices" in debt collection. 15 U.S.C. §§ 1692(a) – 1692(e). Any person who receives a debt collection letter containing a violation of the FDCPA is a victim of abusive practices. *See* 15 U.S.C. §§ 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses").

36. 15 U.S.C. § 1692e generally prohibits "any false, deceptive, or misleading representation or means in connection with the collection of any debt."

37. 15 U.S.C. § 1692e(2)(a) specifically prohibits "The false representation of— the character, amount, or legal status of any debt.

38. 15 U.S.C. § 1692e(10) specifically prohibits the "use of any false representation or deceptive means to collect or attempt to collect any debt."

39. 15 U.S.C. § 1692f generally prohibits "unfair or unconscionable means to collect or attempt to collect any debt."

40. 15 U.S.C. § 1692f(1) specifically prohibits "the collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law."

41. 15 U.S.C. § 1692g(a)(1) requires the debt collector to mail the consumer a written notice that clearly and accurately states the amount sought.

### *The WCA*

42. The Wisconsin Consumer Act ("WCA") was enacted to protect consumers against unfair, deceptive, and unconscionable business practices and to encourage development of fair and economically sound practices in consumer transactions. Wis. Stat. § 421.102(2).

43. The Wisconsin Supreme Court has favorably cited authority finding that the WCA "goes further to protect consumer interests than any other such legislation in the country," and is "probably the most sweeping consumer credit legislation yet enacted in any state." *Kett* v. *Community Credit Plan, Inc.,* 228 Wis. 2d 1, 18 n**.**15, 596 N.W.2d 786 (1999) (citations omitted).

44. To further these goals, the Act's protections must be "liberally construed and applied." Wis. Stat. § 421.102(1); *see also* § 425.301.

45. "The basic purpose of the remedies set forth in Chapter 425, Stats., is to induce compliance with the WCA and thereby promote its underlying objectives." *First Wisconsin Nat'l Bank v. Nicolaou*, 113 Wis. 2d 524, 533, 335 N.W.2d 390 (1983). Thus, private actions under the WCA are designed to both benefit consumers whose rights have been violated and also competitors of the violators, whose competitive advantage should not be diminished because of their compliance with the law.

46. To carry out this intent, the WCA provides Wisconsin consumers with an array of protections and legal remedies. The Act contains significant and sweeping restrictions on the activities of those attempting to collect debts. *See* Wis. Stats. § 427.104.

47. The Act limits the amounts and types of additional fees that may be charged to consumers in conjunction with transactions. Wis. Stats. § 422.202(1). The Act also provides injured consumers with causes of action for class-wide statutory and actual damages and injunctive remedies against defendants on behalf of all customers who suffer similar injuries. *See* Wis. Stats. §§ 426.110(1); § 426.110(4)(e). Finally, "a customer may not waive or agree to forego rights or benefits under [the Act]." Wis. Stat. § 421.106(1).

48. Consumers' WCA claims under Wis. Stat. § 427.104(1) are analyzed using the same methods as claims under the FDCPA. Indeed, the WCA itself requires that the court analyze the WCA "in accordance with the policies underlying a federal consumer credit protection act," including the FDCPA. Wis. Stat. § 421.102(1).

49. Further, the Wisconsin Supreme Court has held that WCA claims relating to debt collection are to be analyzed under the "unsophisticated consumer" standard. *Brunton v. Nuvell Credit Corp.*, 785 N.W.2d 302, 314-15. In *Brunton*, the Wisconsin Supreme Court explicitly adopted and followed the "unsophisticated consumer" standard, citing and discussing *Gammon v. GC Servs. Ltd. P'ship*, 27 F.3d 1254, 1257 (7th Cir. 1994). *Id.*

50. Wis. Stat. § 427.104(1)(g) states that a debt collector may not: "Communicate with the customer . . . in such a manner as can reasonably be expected to threaten or harass the customer."

51. Wis. Stat. § 427.104(1)(h) states that a debt collector may not: "Engage in other conduct which can reasonably be expected to threaten or harass the customer …." Wis. Admin.

9

Code § DFI-Bkg 74.16(9) defines such "other conduct" as "including conduct which violates the Federal Fair Debt Collection Practices Act."

52. Wis. Stat. § 427.104(1)(j) states that a debt collector may not: "Claim, or attempt or threaten to enforce a right with knowledge or reason to know that the right does not exist."

53. Wis. Stat. § 427.104(1)(L) states that a debt collector may not: "Threaten action against the customer unless like action is taken in regular course or is intended with respect to the particular debt."

## COUNT I – FDCPA

54. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

55. The amount sought in Exhibit B is greater than the "Balance Due" stated in the Itemized Statement in Exhibit C.

56. The amount sought on the first page of Exhibit C is greater than the "Balance Due" stated in the Itemized Statement in Exhibit C.

57. The unsophisticated consumer would be confused as to the amount that Defendant was attempting to collect, and whether the amounts sought were legitimate.

58. Defendant violated 15 U.S.C. §§ 1692e, 1692e(2)(a), 1692e(10), 1692f, 1692f(1), and 1692g(a)(1).

## COUNT II – WCA

59. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

60. The amount sought in Exhibit B is greater than the "Balance Due" stated in the Itemized Statement in Exhibit C.

61. The amount sought on the first page of Exhibit C is greater than the "Balance Due" stated in the Itemized Statement in Exhibit C.

62. The unsophisticated consumer would be confused as to the amount that Defendant was attempting to collect, and whether the amounts sought were legitimate.

63. Defendant violated Wis. Stat. §§ 427.104(1)(g), 427.104(1)(h), 427.104(1)(j), and 427.104(1)(L).

## CLASS ALLEGATIONS

64. Plaintiff brings this action on behalf of a class.

65. Plaintiff defines the class as (a) all natural persons in the State of Wisconsin (b) who were sent collection letters by Defendant in the form of Exhibit C to the complaint in this action, (c) seeking to collect a debt for personal, family or household purposes, (d) in which the "Balance" stated on the first page of Exhibit C is greater than the "Balance Due" stated in the documents purporting to validate the debt, (e) between March 20, 2019 and March 20, 2019, inclusive, (f) that was not returned by the postal service.

66. The Class is so numerous that joinder is impracticable.

67. Upon information and belief, there are more than 50 members of the Class.

68. There are questions of law and fact common to the members of the class, which common questions predominate over any questions that affect only individual class members. The predominant common question is whether Defendant violated the FDCPA and/or the WCA.

69. Plaintiff's claims are typical of the claims of the Class members. All are based on the same factual and legal theories.

70. Plaintiff will fairly and adequately represent the interests of the Class members. Plaintiff has retained counsel experienced in consumer credit and debt collection abuse cases.

11

71. A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

## JURY DEMAND

72. Plaintiff hereby demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of Plaintiff and the Class and against Defendant for:

(a) actual damages;

(b) statutory damages;

(c) attorneys' fees, litigation expenses and costs of suit; and

(d) such other or further relief as the Court deems proper.

Dated: March 20, 2019

**ADEMI & O'REILLY, LLP**

By: /s/ Mark A. Eldridge
John D. Blythin (SBN 1046105)
Mark A. Eldridge (SBN 1089944)
Jesse Fruchter (SBN 1097673)
Ben J. Slatky (SBN 1106892)
3620 East Layton Avenue
Cudahy, WI 53110
(414) 482-8000
(414) 482-8001 (fax)
jblythin@ademilaw.com
meldridge@ademilaw.com
jfruchter@ademilaw.com
bslatky@ademilaw.com